ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiff

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD CANTLIN, JR., <br><br>  Plaintiff, <br><br> vs. <br><br> GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND DRYDOCK COMPANY, and WARREN PUMPS, LLC, <br><br>  Defendants. | No. C08-982-JCS <br><br> COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; <br><br> DEMAND FOR JURY TRIAL |

**I.**

**PARTIES**

1. Plaintiff in this action, DONALD CANTLIN, JR. has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2. Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

////

4. All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiff DONALD CANTLIN, JR. is a citizen of the State of California. Defendant GENERAL ELECTRIC COMPANY is a corporation incorporated under the laws of and having its principal places of business in Connecticut. Defendant CRAMP SHIPBUILDING AND DRYDOCK COMPANY is a corporation incorporated under the laws of and having its principal places of business in Pennsylvania. Defendant WARREN PUMPS, LLC is a corporation incorporated under the laws of , and having its principal places of business in New Jersey.

////

1   This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9.   <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>

(Negligence)

PLAINTIFF DONALD CANTLIN, JR. COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND DRYDOCK COMPANY, and WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.   At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>GENERAL ELECTRIC JET ENGINES |
| CRAMP SHIPBUILDING AND DRYDOCK COMPANY | WILLIAM CRAMP & SONS SHIPBUILDING COMPANY<br>CRAMP SHIPBUILDING COMPANY<br>WILLIAM CRAMP & SONS CO. |
| WARREN PUMPS, LLC | WARREN PUMPS, INC.<br>QUIMBY PUMP COMPANY<br>WARREN STEAM PUMPS COMPANY |

////

11.   At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.   At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13.   Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14.   Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering,

fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.    Plaintiff have used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit** A, attached to plaintiff's complaint and incorporated by reference herein.

16.    As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.    As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

1  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to
2  Plaintiff's general damage.
3    20. As a direct and proximate result of the aforesaid conduct of the defendants, their
4  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur
5  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays
6  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this
7  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost
8  thereof is ascertained.
9    21. As a further direct and proximate result of the said conduct of the defendants,
10 their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature
11 and extent of which are not yet known to Plaintiff; and leave is requested to amend this
12 complaint to conform to proof at the time of trial.
13   22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
14 directors and managing agents participated in, authorized, expressly and impliedly ratified, and
15 had full knowledge of, or should have known of, each of the acts set forth herein.
16   23. Defendants, their "alternate entities," and each of them, are liable for the
17 fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
18 and each defendant's officers, directors and managing agents participated in, authorized,
19 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
20 each of their ALTERNATE ENTITIES as set forth herein.
21   24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
22 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
23 disregard and indifference to the safety and health of "exposed persons". Plaintiff, for the sake of
24 example and by way of punishing said defendants, seeks punitive damages according to proof.
25   WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
26 each of them, as hereinafter set forth.
27 ////
28 ////

## SECOND CAUSE OF ACTION

(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DONALD CANTLIN, JR. COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND DRYDOCK COMPANY, and WARREN PUMPS, LLC, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and

advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

1  intentionally failed to reveal their knowledge of said risk, and consciously and actively
2  concealed and suppressed said knowledge from "exposed persons" and members of the general
3  public, thus impliedly representing to "exposed persons" and members of the general public that
4  asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.
5  Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and
6  made these implied representations with the knowledge of the falsity of said implied
7  representations.

8   32.   The above-referenced conduct of said defendants, their ALTERNATE
9  ENTITIES, and each of them, was motivated by the financial interest of said defendants, their
10 ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design,
11 modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for
12 sale, supply, sale, inspection, installation, contracting for installation, repair, marketing,
13 warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and
14 asbestos-containing products. In pursuance of said financial motivation, said defendants, their
15 ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
16 persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
17 containing products to cause injury to "exposed persons" and induced persons to work with and
18 be exposed thereto, including Plaintiff.

19   33.   Plaintiff alleges that the aforementioned defendants, their ALTERNATE
20 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
21 products to be safe for their intended use but that their asbestos and asbestos-containing
22 products, created an unreasonable risk of bodily harm to exposed persons.

23   34.   Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
24 and various asbestos-containing products manufactured, fabricated, inadequately researched,
25 designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
26 for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
27 marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
28 aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff

1  cannot identify precisely which asbestos or asbestos-containing products caused the injuries
2  complained of herein.
3      35.  Plaintiff relied upon defendants', their "alternate entities'", and each of their
4  representations, lack of warnings, and implied warranties of fitness of asbestos and their
5  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff have
6  been injured permanently as alleged herein.
7      36.  As a direct and proximate result of the actions and conduct outlined herein,
8  Plaintiff have suffered the injuries and damages previously alleged.
9      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
10 ENTITIES, and each of them, as hereinafter set forth.

## IV.

## PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

(a) For Plaintiff's general damages according to proof;

(b) For Plaintiff's loss of income, wages and earning potential according to proof;

(c) For Plaintiff's medical and related expenses according to proof;

(d) For Plaintiff's cost of suit herein;

(e) For exemplary or punitive damages according to proof;

(f) For damages for fraud according to proof; and

(g) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: February 10, 2008          BRAYTON❖PURCELL LLP

/s/ David R. Donadio

By: _____
David R. Donadio
Attorneys for Plaintiff

////

1  ////

2  ////

3

4  <u>JURY DEMAND</u>

5  Plaintiff hereby demand trial by jury of all issues of this cause.

6

7  Dated:  February 10, 2008                    BRAYTON❖PURCELL LLP

8                                               /s/  David R. Donadio

9                              By:  _____
                                    David R. Donadio
                                    Attorneys for Plaintiff

EXHIBIT A

Plaintiff:   **DONALD CANTLIN, JR.**

Plaintiff's injuries:    Plaintiff was diagnosed with asbestosis on or about August 1997.

Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| American Woolen Company, Enfield, NH | Baltic Mill, Enfield, NH | Textile Worker | Off and on in 1938, 1939, 1941, 1942,  1946 |

Job Duties: Plaintiff was responsible for switching out containers of pulled wool from the line workers.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| US Navy | 1st Naval District Headquarters, Boston MA; <u>FULLAM</u> (DD-474), Boston Naval Shipyard, Boston, MA; Mare Island Naval Shipyard, Vallejo, CA; <u>WYOMING</u> (AG-17) | Seaman, 1st Class | 11/20/42-2/2/46<br><br>1943-1945 |

Job Duties:  Plaintiff served in by the US Navy between November 20, 1942 and February 2, 1946, serving onboard the <u>FULLAM</u> (DD-474) from 1943 through 1945, as a Fireman 2nd Class for approximately one year in the boiler room. Plaintiff's next assignment was as Water Tender 3 (boilermaker), to Machinist Mate 2nd Class (Engine Room in charge of Pump Level), to his final promotion as Machinist Mate 3 (Engine Room).  Plaintiff recalls undergoing 11-12 weeks of basic training at 1st Naval District Headquarters, Boston, Massachusetts, before boarding the newly commissioned <u>FULLAM</u> (DD-474) at the Boston Naval Shipyard on March 2, 1943, and

remaining on the FULLAM throughout sea trials, overhauls and combat in the Asian Pacific Theater until November 1945 when the FULLAM entered Puget Sound Naval Shipyard, Bremerton, Washington. Plaintiff recalls attending gunnery training for two weeks onboard the WYOMING while assigned to the FULLAM before the ship completed sea trials.

Upon completion of sea trials, the FULLAM headed to the Asian Pacific Theater, undergoing an overhaul at Mare Island Naval Shipyard from July 6, 1943 through July 25, 1943, arriving in the Solomon Islands for escort and patrol duties in the Asian Pacific Theater. In 1944, the FULLAM collided with another ship and was forced to sail to Manus for temporary repairs and an overhaul at Mare Island Naval Shipyard. The FULLAM returned to the Pacific Theater continuing to run escort and patrol duties before entering Puget Sound Naval Shipyard on November 13, 1945.

The FULLAM was a steam-powered vessel, and contained boilers that generated high-temperature, high-pressure steam for propulsion, and equipment and systems located throughout the ship. Plaintiff recalls the FULLAM contained two engine rooms and two boiler rooms that were not connected. As a water tender, plaintiff worked on all the equipment in the boiler room, including, but not limited to: scraping, sweeping and mucking out the insides of the boilers, forced draft blowers, safety valves and various pumps. Plaintiff occasionally performed refractory work on the BABCOCK & WILCOX COMPANY (boilers) on the FULLAM. Plaintiff cleaned and changed out gaskets on the blowers, valves and flanges on a frequent basis. Plaintiff recalls greasing the bearings on the draft blower and cleaning the blades. Plaintiff's job duties as a machinist mate in the Engine Rooms included standing watch over the operation of turbines and associated equipment and performing the following tasks: pipefitting, applying and/or removing valve packings, applying and/or removing boiler lagging, boiler jackets and boiler feed pumps, applying and/or removing steam line insulation and cutting and/or fitting asbestos tubing, pipe, sheet, millboard and insulation, removing asbestos pads and/or covering from equipment and pipe joints using a chip hammer prior to maintenance and repair duties. Plaintiff recalls WESTINGHOUSE ELECTRIC CORPORATION turbines and condensers on the FULLAM. Plaintiff recalls mixing bags of JOHNS MANVILLE insulating material in a bucket with water then the mixture to asbestos insulation by hand, then covering the insulation with asbestos tape to finish it off.

Plaintiff performed repair work, including the removal and replacement of original insulation lines, packing and gaskets material, pumps, and compressors on the FULLAM including but not limited to the following: CRANE CO., (low pressure valves); LESLIE (high pressure relief valves); WARREN PUMPS, LLC.(main feed pumps to boilers and flanges); GOULDS PUMPS (IPG), INC., (bilge pumps in forward engine room); BUFFALO PUMPS, INC.; and INGERSOLL-RAND COMPANY (compressors throughout the FULLAM). Plaintiff personally repaired and saw others repair globe, gate, and butterfly-type steam line valves ranging in size up to 14 inches. Plaintiff personally repaired and saw others perform repair work on main feed pumps and GOULD PUMPS (IPG), INC. Plaintiff saw the repair and removal of valves at sea. Plaintiff recalls placing flanges on gasket sheeting material, cutting the outline with scissors, greasing the gasket then replacing the flange on the pump.

Plaintiff recalls there were two fire rooms and four boilers on the FULLAM. Plaintiff recalls the fire rooms were very dusty. Plaintiff recalls having contact with asbestos-containing materials including but not limited to: raw fiber, mud, cloth, tape, tube, pre-formed pipecoverings, cement, lagging, insulation pads, gaskets, curtains, sheets, and bags. Plaintiff recalls working in close proximity to various tradesmen performing the following duties, including but not limited to: pipefitting, welding and those cutting or fitting asbestos tubing, pipe, sheet, millboard and insulation. Plaintiff recalls the following co-worker: Paul Beyer, Shawnee Mission, Kansas.

During the time the plaintiff served on the FULLAM, most of this piping was insulated with asbestos-containing pipecovering. Throughout his employment on the FULLAM, plaintiff was exposed to hazardous levels of asbestos fiber and dust released, discharged and emitted into the air spaces of the FULLAM from asbestos containing material which traveled, spread and migrated through ventilation systems and through the air in various quarters and compartments throughout the ship caused by repair work, sweeping, walking, and vibrations from various components onboard the ship. Throughout his employment on the FULLAM, plaintiff was not provided with a mask or other respiratory protection, nor were there procedures in place to contain or control the fiber or dust.

Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Repair Facility, 32nd Annex, San Diego, CA; GEORGE CLYMER (APA-27); AJAX (AR-6); BUSHNELL (AS-15) | Machinist Mate | Approximately 1951-1953 |

Job Duties: Plaintiff was transported to Yoshuka, Japan onboard the GEORGE CLYMER (APA-27) out of San Diego, California to Japan. Plaintiff boarded the AJAX (AR-6) in Yokuska, Japan, where he served as a Machinist Mate 2, overseeing maintenance and repairs in the Evaporator Room and the fresh water system from June 1951 to December 1951. Plaintiff recalls GENERAL ELECTRIC COMPANY motors on the ventilation system throughout the AJAX. Plaintiff embarked on the BUSHNELL (AS-15) at Mare Island Naval Shipyard, Vallejo, California where the ship was undergoing re-commissioning for service. Plaintiff served as a Machinist Mate 2 on the BUSHNELL (AS-15) overseeing the Distilled Water Room, distilling water for the ships batteries. Plaintiff recalls GENERAL ELECTRIC COMPANY motors throughout the BUSHNELL. Plaintiff currently contends that he was exposed to asbestos during this employment.

Throughout his employment with the US Navy, plaintiff recalls the following manufacturers of pumps; CRANE CO.; BURK PUMPS, INC.; FISHER CONTROLS INTERNATIONAL, LLC (pumps or valves); GOULDS PUMPS (IPG), INC.

Throughout his employment with the US Navy, plaintiff recalls the following manufacturers of valves: ATLAS VALVE CO; FOSTER ENGINEERING (relief valves for boilers and pumps); LESLIE CONTROLS, INC.; SHADE VALVE MANUFACTURING; CHARLES M. BAILEY.

Throughout his employment with the US Navy, plaintiff believes he was exposed to packing material from the following manufacturers; GARLOCK; COLTS MANUFACTURING CO.; TURNER BROS ASBESTOS; JOHNS MANVILLE; PILOT PACKING CO; RAYBESTOS-MANHATTEN; UNITED STATES RUBBER CO (UNIROYAL HOLDING, INC.); and DELAWARE ASBESTOS & RUBBER CO.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Don Cantlin's Radio & T.V., Enfield, NH | Don Cantlin's Radio & T.V., Enfield, NH | Owner | 1954-1976 |

Job Duties: Plaintiff owned a television repair shop. Plaintiff handled sales, delivered televisions and installed antennas. Plaintiff employed a repairman to service and maintain TVs. Plaintiff would perform repair work as needed. Plaintiff worked on PHILCO radios (WHITE CONSOLIDATED INDUSTRIES, INC.); CAPHART TVs, RCA TVs and MOTOROLA TVs and radios. Plaintiff worked on radio tubes and TV picture tubes and had to remove and replace them on a regular basis. Plaintiff recalls drilling, cutting, and stripping wires while cleaning and repairing equipment, including trnasformers. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Postal Service, Enfield, NH | Grafton County, Enfield, NH | Postal Worker | 1977-1987 |

Job Duties: Plaintiff was employed as a postal worker delivering mail. Plaintiff is currently unaware if he was exposed to asbestos during this employment.